# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JESUS F. CARRASCO,

        Plaintiff,

vs.                               No. CIV 01-291 MV/LCS

**LARRY G. MASSANARI,**[1] ,
**Acting Commissioner,**
**Social Security Administration,**

        Defendant.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS
## AND RECOMMENDED DISPOSITION

THIS MATTER came before the Court upon Plaintiff's Motion to Reverse or Remand the Administrative Decision (*Doc. 9*), filed August 21, 2001. The Commissioner of Social Security Administration issued a final decision denying the Plaintiff his claim for a period of disability insurance benefits and supplemental security income. The United States Magistrate Judge, having considered the Motion, the memoranda submitted by the parties, the administrative record and the applicable law, finds that the motion is well taken and recommends that it be GRANTED.

## PROPOSED FINDINGS

## I. PROCEDURAL RECORD

1.     Plaintiff Jesus Carrasco initially filed an application for a period of disability insurance benefits and supplemental security income with the Social Security Administration in September of

---

[1]     Effective March 29, 2001, Larry G. Massanari was appointed to serve as Acting Commissioner of Social Security. Pursuant to FED. R. CIV. P. 25 (d), Larry G. Massanari, Acting Commissioner of Social Security, is substituted for William A. Halter, Acting Commissioner of Social Security, as the defendant in this action.

1

1994 alleging a disability since August 20, 1994. Plaintiff's application was denied at the initial level on February 28, 1995 and at the reconsideration level on May 9, 1995. Plaintiff appealed the denial of his claim by filing a Request for Hearing by Administrative Law Judge (ALJ) in June of 1995.

2. Administrative Law Judge John J. Wren conducted the Plaintiff's first hearing on April 5, 1996. *See* R. at 325. ALJ Wren subsequently issued an unfavorable decision. On June 6, 1996, the Plaintiff filed a timely request for review to the Appeals Council. *See* R. at 8. While the request for review was pending before the Council, the Plaintiff filed a new application for disability insurance benefits and supplement security income on March 7, 1997 alleging an onset date of disability of August 20, 1994. *See* R. at 176-78. The March, 1997 application was denied at the initial level on May 6, 1997, and at the reconsideration level on July 7, 1997. *See* R. at 164 and 168. Plaintiff filed a request for a hearing and another hearing was held before ALJ Wren on March 19, 1998. *See* R. at 310. ALJ Wren issued yet another unfavorable decision on July 30, 1998. *See* R. at 11.

3. ALJ Wren made the following findings in his July, 1998 decision according to the sequential analysis set forth in 20 C.F.R. § 404.1520(a)-(f) and *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993): the claimant had not engaged in substantial gainful activity since August 20, 1994; the severity of the claimant's impairments had not met or equaled any of the impairments found in the Listing of Impairments, Appendix 1 to Subpart P, 20 C.F.R. §§ 404.1501-1599; claimant had a "severe" impairment or combination of impairments due to status post left congenital hip dislocation with a containment procedure at age 7, gross arthritic change in the right knee, valgus and flexion deformity of the right tibia, and extensor halucis longus and extensor digitorum longus weakness on the right; the claimant's subjective complaints and functional

limitations, including pain were not supported by the evidence as a whole in the disabling degree alleged and therefore lacked credibility; and the claimant could not perform his past relevant work. *See* R. at 14-18. Because of these findings, the ALJ relied on the grids and finally concluded that Mr. Carrasco was not disabled and that he had retained the residual functional capacity for work at a light level of exertion during the relevant time period. *See* R. at 17.

4. Subsequently, on September 23, 1998, the Plaintiff filed yet another application for disability insurance benefits and supplement security income alleging the same date of onset as stated in his original application, August 20, 1994. At this time, the ALJ found the Plaintiff disabled commencing August 28, 1998. *See* R. at 6. Thereafter, the Appeals Council upheld the unfavorable decisions of ALJ Wren and the denial of benefits to the Plaintiff for the period of August 20, 1994 to August 27, 1998. The Plaintiff hereafter filed his complaint for court review of he ALJ's July, 1998 decision. (*Doc. 1*). Consequently, the issue before this Court is whether the Commissioner was in error for denying Plaintiff benefits from August 20, 1994 to August 27, 1998. The decision under review is the last unfavorable decision from the Commissioner dated July 30, 1998. *See* R. at 14-18.

## II. STANDARD OF REVIEW

5. The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *See Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Secretary of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993) (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983) (citation omitted)). A decision of an ALJ

3

is not supported by substantial evidence if other evidence on the record overwhelms the evidence supporting the decision. *See Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

6. In order to qualify for disability insurance benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months, which prevents the claimant from engaging in substantial gainful activity. *See* 42 U.S.C. §423(d)(1)(A); *see also Thompson*, 987 F.2d at 1486. The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. *See* 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *See Thompson*, 987 F.2d at 1487.

7. At the first four levels of the sequential evaluation process, the claimant must show he is not engaged in substantial gainful employment, he has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and his impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or he is unable to perform work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

### III. ADMINISTRATIVE RECORD

8. The record indicates that the Plaintiff was born with a congenital hip problem. *See* R. at 122 and 132. As a young child, he underwent multiple surgeries on his right leg and left hip. *Id*. He is currently 48 years of age. Notwithstanding, his hip deformities, the Plaintiff is a high school graduate and attended trade school in Roswell. *See* R. at 157. Mr. Carrasco performed

heavy exertional work as an oilfield service man from 1979 through 1989, and as a oil field supply warehouseman from 1989 through 1994. *See* R. at 192. In August of 1994, he started developing increasing pain in his left buttock and hip region and ultimately stopped working. *See* R. at 280. He started using a cane and intermittent crutches. *Id*.

9. In October of 1994, Mr. Carrasco visited Lon D. Babbitt, M.D. *See* R. at 107. Dr. Babbitt found that Mr. Carrasco exhibited "severe degenerative changes in the left hip joint including . . . . aseptic necrosis of the left femoral head." *Id*. The doctor also noted that "changes in the left hip [were] apparently a residuum of previous congenital dislocation of the left hip, surgically treated." *Id*. A few months later, Mr. Carrasco complained of hip and knee problems to Don Clark, M.D. *See* R. at 109. The Plaintiff reported that for the past two years his right knee had been grinding and that it occasionally popped when he walked. *Id*. In addition, he stated that he could only sit for approximately one hour and had started wearing a two inch heal lift on his right leg. *Id*. Dr. Clark remarked that there was evidence of a "congenital dislocation of the left hip with several surgical procedures and [a] mostly frozen hip joint on the left." *See* R. at 112.

10. In February of 1995, Dr. Clark filled out a statement of Mr. Carrasco's ability to do work-related activities. *See* R. at 117. He stated that lifting, carrying, standing, and walking were all affected by Mr. Carrasco's impairment. *Id*. He could lift approximately fifty pounds without carrying; he could frequently lift and carry approximately twenty pounds; and he could stand or walk for approximately four hours a day. *Id*.

11. Four months later, the Plaintiff was seen by Jorge Abalos, D.O. *See* R. at 122. Dr. Abalos noted that the "Patient had decreased straight leg ability on the left side. He was unable to bend and flex the knee/hip on the left to tie his shoe or put on his shoe. This is worsening on the last

5

six months. On the right leg, there was significant deformity to the tibia to the mid-portion." *Id*. The doctor also noted that Mr. Carrasco was experiencing right hip pain, right leg pain, as well as back pain, all secondary to his deformities. *Id*.

12. Earl A. Latimer, III, M.D. evaluated the Plaintiff's right knee and left hip on July 6, 1995. *See* R. at 145. Dr. Latimer examined Mr. Carrasco's X-rays and stated that his "pelvis shows severe degenerative joint disease with deformity of the head consistent with developmental hip dysplasia on the left [and]. . . . .the right knee shows severe tricompartmental osteoarthritis with deformity of the condyles." *See* R. at 145. He also noted that there is complete "loss of joint space." *Id*.

13. One month later, Dr. Dennis Rivero examined Mr. Carrasco's condition and stated that he has "a rather significant problem in the right lower extremity in that he has varus deformity of the distal femur . . . ."*See* R. at 134. He also stated that he thought it would be "difficult to do a total knee replacement without a least addressing the deformity. . . .Furthermore, technically while it may be a little bit of a challenge, I would expect he should get a good result with one operation associated with his hip." *Id*

14. On February 5, 1996, Marshall Baca, M.D., one the Plaintiff's treating physicians, wrote a letter on behalf of Mr. Carrasco. *See* R. at 125. He stated within the letter that Mr. Carrasco suffers from "a congenital problem affecting his hips and the long bones of his lower extremities. He has required multiple surgeries in the past during his childhood and adolescence, including left hip surgery and right thigh and knee surgery. As a consequence of his underlying illness he now has severe arthritis in the hips, left worse than right, and advanced arthritis in his right knee. These cause great discomfort intermittently, which is worse with prolonged activity, including prolonged standing.

For these reasons Mr. Carrasco is seeking disability benefits. I support him in these efforts." *See* R. at 125.

### III. DISCUSSION

15. Plaintiff essentially raises two arguments in support of his Motion to Reverse or Remand the Administrative Agency Decision. First, the Plaintiff argues the ALJ failed to properly evaluate the claimant's disability under the listings and second, the ALJ erred in applying the grids.

**Step Three Listed Impairment Determination**

16. "At step three, the ALJ determines whether the claimant's impairment is equivalent to one of a number of listed impairments that the [Commissioner] acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir.1996) (quotation omitted). Plaintiff contends his impairments meet or equal the criteria for listings 1.03, 1.08, 1.09, and 1.11, the listings for arthritis of a major weight-bearing joint, amputation or anatomical deformity of both hands or both feet, osteomyelitis or septic arthritis, and fracture of the femur, tibia, tarsal bone or pelvis. *See* 20 C.F.R. Part 404, Subpart P, App. 1.

17. For example, in order to qualify under listing 1.03, the Plaintiff must present a "history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination" and meet one of the following two conditions: he must exhibit (1) "gross deformity of the hip or knee", or (2) "[r]econstructive surgery or surgical arthodesis of a major weight-bearing joint and return to full weight-bearing status did not occur, or is not expected to occur, within 12 months of onset." *Id.*

18. The ALJ found that "the severity of the claimant's musculoskeletal impairments has not met or equalled [sic] any sections set forth in the Listings of Impairments, as found in Appendix

7

1, Subpart P, Social Security Regulations No.4 The claimant falls short of satisfying listings level severity requirements to be presumed disabled." *See* R. at 15. The ALJ did not provide any analysis of why the Plaintiff did not meet any of the listings. The only evidence discussed revolved around the ALJ's assessment of the Plaintiff's residual functional capacity. Specifically, the ALJ referred to two consulting physicians who claimed the Plaintiff could perform light level exertional work. *See* R. at 16 and 17. The ALJ also stated that, somehow, Dr. Baca's opinion in his February, 1996 letter was consistent with this conclusion.[2] The ALJ did not mention or discuss any of the medical evidence in the record pertaining to the Plaintiff's deformity, arthritis, or his limited motion of his lower extremities. Neither did the ALJ provide any explanation for why he disregarded the opinion of the Plaintiff's treating physicians. Finally the ALJ did not provide any reason for giving greater weight to the opinion of a consulting physician than to the Plaintiff's treating physicians.[3] Thus, the ALJ made several legal errors with respect to this evidence at step three.

19. In contravention of *Clifton*, 79 F.3d at 1009-10, the ALJ did not discuss the evidence he accepted or rejected with respect to the requirements of listing 1.03 or any other listing. The ALJ is charged with carefully considering the entire record and linking his findings to specific evidence. *See id*. (holding the "record must demonstrate that the ALJ considered all of the evidence," and the ALJ must "discuss[ ] the evidence supporting his decision, ... the uncontroverted evidence he chooses not to rely upon, [and] significantly probative evidence he rejects"). Here, the ALJ simply stated that Mr. Carrasco did not meet the criteria of any listing. *See* R. at 15. As the Tenth Circuit stated in

---

[2] *See supra* ¶ 14.

[3] There are multiple findings in the record pertaining to the Plaintiff's congenital hip deformity and its affect on his arthritis and ability to move. *See* R. at 101, 103, 107, 112, 122, 132, 137, and 145.

8

*Clifton*, "[s]uch a bare conclusion is beyond meaningful judicial review." 79 F.3d at 1009.[4]

20. In addition, the ALJ completely disregarded the Plaintiff's treating physicians' opinions. An ALJ is required to give controlling weight to a treating physician's well-supported opinion, so long as it is not inconsistent with other substantial evidence in the record. *See* 20 C.F.R. § 416.927(d)(2); *see also Bean v. Chater*, 77 F.3d 1210, 1214 (10th Cir.1995). When an ALJ decides to disregard a medical report by a claimant's physician, he must set forth "specific, legitimate reasons" for his decision. *See Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir.1987)). For instance, one of the Plaintiff's treating physicians, Dr. Baca, stated that Mr. Carrasco suffers from

> a congenital problem affecting his hips and the long bones of his lower extremities. He has required multiple surgeries in the past during his childhood and adolescence, including left hip surgery and right thigh and knee surgery. As a consequence of his underlying illness he now has severe arthritis in the hips, left worse than right, and advanced arthritis in his right knee. These cause great discomfort intermittently, which is worse with prolonged activity, including prolonged standing. For these reasons Mr. Carrasco is seeking disability benefits. I support him in these efforts. *See* R. at 125.

Another treating physician noted that Mr. Carrasco is "clearly disabled by his condition and will need some kind of operative procedure to address his problems is he wishes to correct them." *See* R. at 132. In addition, there are multiple references to the Plaintiff's congenital hip deformity and its affect on his arthritis and ability to move. *See* R. at 101, 103, 107, 112, 122, 132, 137, and 145.[5]

---

[4] The Tenth Circuit further explained that "[u]nder [the Social Security] statute, the ALJ was required to discuss the evidence and explain why he found that appellant was not disabled at step three. *Cook v. Heckler,* 783 F.2d 1168, 1172-73 (4th Cir.1986); *see also Brown v. Bowen, 794 F.2d 703, 708 (D.C.Cir.1986)* (relying upon 20 C.F.R. 404.953 and 5 U.S.C. 557(c)[ (3)(A) ] to hold that an ALJ must explain his adverse decisions)." *Clifton*, 79 F.3d at 1009.

[5] The ALJ also failed to mention any of the following medical impressions from the Plaintiff's treating physicians: Dr. Babbitt noted in October, 1994 that Mr. Carrasco exhibited "severe degenerative changes in the left hip joint including suggestion of aseptic necrosis of the left femoral head." *Id*. Dr. Babbitt also noted that the changes in the Plaintiff's left hip were due to his previous congenital dislocation. *See* R. at 107; In November, 1994, Dr. Hill stated that Mr. Carrasco's hip had minimal rotation with pain. S*ee* R. at 101; Dr. Clark also noted

21. Further, there are several specific factors the ALJ must consider, including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Goatcher v. United States Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995). The ALJ did not consider any of these factors in disregarding the treating physicians' opinions. In addition, the ALJ failed to discuss significantly probative evidence that he chose not to rely on when reaching his decision of non-disability at step three.

22. Thus, because the ALJ did not provide any explanation for rejecting significantly probative medical evidence at step three, I cannot meaningfully review the ALJ's remaining findings.[6] *See, e.g., Clifton*, 79 F.3d at 1009 (holding "[i]n the absence of ALJ findings supported by specific weighing of the evidence, we cannot assess whether relevant evidence adequately supports the ALJ's conclusion"); *see also Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir.1995) (holding ALJ's listing of

---

that Mr. Carrasco suffered from a congenital hip dislocation but added that his hip joint is mostly frozen on the left. *See* R. at 112; Dr. Abalos noted in June of 1995 that Mr. Carrasco has a "significant deformity to the tibia, to the mid-portion . . . . [as well as] gross deformity of the knee." *See* R. at 122. Dr. Abalos later added that X-rays indicated Plaintiff's "left hip is severely arthritic and deformed." *See* R. at 132; Dr. Latimer interpreted an X-ray of the Plaintiff's knee and stated that "the right knee shows severe tricompartmental osteoarthritis with deformity of the condyles." *See* R. at 145. He also noted that there is "complete loss of joint space." *Id.*

[6] Because the standard of review in a Social Security appeal is whether the Commissioner's <u>final</u> decision is supported by substantial evidence and whether he applied the correct legal standards, *see Hamilton,* 961 F.2d at1497-98, my conclusion with respect to the ALJ's listings' analysis affects the outcome of a step four and step five analysis. I found that the ALJ failed to discuss uncontroverted and extremely probative evidence when coming to his step three conclusion. Because the ALJ failed to discuss this evidence in general, I can not properly review his step four and step five findings.

factors he considered was inadequate when court was "left to speculate what specific evidence led the ALJ to [his conclusion]"). Although I must review the ALJ's decision for substantial evidence, "[I am] not in a position to draw factual conclusions on behalf of the ALJ." *See Prince v. Sullivan*, 933 F.2d 598, 603 (7th Cir.1991). Therefore, this case should be remanded to the Commissioner for further analysis of the Plaintiff's condition pursuant to the relevant listings, and if necessary, for the remaining sequential analysis.

## RECOMMENDED DISPOSITION

The ALJ did not apply correct legal standards and his decision is not supported by substantial evidence. The Plaintiff's Motion to Reverse and Remand Administrative Decision, filed August 21, 2001, should be granted. This case should be remanded to the Commissioner for completion of the step three listing level determination, and if necessary, of the remaining sequential analysis. The ALJ must provide the appropriate explanation for rejecting any supportive medical evidence. Timely objections to the foregoing may be made pursuant to 28 U.S.C. §636(b)(1)(C). Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendations with the Clerk of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**